## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## (EASTERN DUBUQUE DIVISION)

| | | |
|---|---|---|
| **SCOTT MICHAEL HARRY** | : | **20-cv-1046-LTS-MAR** |
| **Petitioner** | : | **Case No. 2:17-CR-01017** |
| **V.** | : | |
| | : | **Judge Leonard T. Strand** |
| **UNITED STATES OF AMERICA** | : | |
| **Respondent** | : | |

## BRIEF IN SUPPORT OF MOTION UNDER § 2255
## TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## BY A PERSON IN FEDERAL CUSTODY

Petitioner, Scott Michael Harry, Pro se, herein submits his brief in support of of his motion under § 2255 to vacate,, set aside or correct sentence by a person in federal custody and states the following in support thereof:

**GROUND ONE: Violation of Petitioner's Sixth Amendment Right to Effective Assistance of Trial Counsel**

To prevail on his claim for ineffective assistance of counsel, Washington must establish that Clarke's performance was deficient and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S 668. at 687–89. To establish deficient performance, Washington must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, Washington must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

**(a) Trial counsel failed to effectively investigate the calibration of the radar gun used to premise the "traffic stop."**

In this case, Petitioner was denied his constitutional right to effective assistance of counsel by his inadequate investigation of probable cause for the "traffic stop." Counsel never checked the calibration records of the radar gun, nor was there any question of Kearney's possible ability to alter the calibration. It was brought out that Kearney manually calibrated the radar gun. The records of the manufacturer's February 10, 2017 calibration records were never sought by counsel.

It is questionable if there was ever a speeding violation due to the officers being unsure of their probable cause to search on the credibility of an untested CI. If the traffic stop was not a necessary pretext for the stop, then Williams would have pulled Petitioner over when he got behind the vehicle. Rather than pull Petitioner over, Williams passed the vehicle driven by Petitioner, and instructed Kearney stop Petitioner for an alleged traffic violation.

Petitioner avers this is an issue because this stop was never about traffic violation, it was being run by Drug Task Force Investigator Williams who directed Officer Kearney how and when to proceed with the stop and canine search.

Investigator Williams had law enforcement at every highway into Dubuque waiting on ready to stop the vehicle.

Officer Kearney testified that he stopped the vehicle for the purported speeding violation, Kearney exited his vehicle alone, by himself,obtained Petitioner's drivers license from Petitioner, returned to his patrol car and asked Williams, "What should we do?" Williams[1] decided to do the K-9 search. It is clear from the record that this was always run by the Drug Task Force and the "mission of the traffic stop" was all smoke and mirrors for a pretext to a drug search. Williams knew that his CI had never proven reliable before, thus, was unreliable.

---

[1] Officer Kearney and Drug Task Force Investigator Williams

It was questionable whether there was probable cause based on use of a Confidential Informant (CI) that had never been used before, nor had ever given reliable information to law enforcement before, thus the CI had never proven reliable in the past.

Counsel should have investigated the reliability of the radar gun, calibration record and whether the results can be manipulated by Kearney to produce the results desired.

In this case, Counsel never established reasonable proof of the accuracy of the radar gun or the way it was implemented by Kearney.

In People v. Dusing, 5 N.Y.2d 126, 181 N.Y.S.2d 493, 155 N.E.2d 393, 394, the court said:

> "Admissibility and weight of opinion evidence and measuring device evidence in speeding cases is governed by the same rules applied in other types of cases. Qualified individuals at appropriate observation posts have always been allowed to state opinions as to speed. [citations] Radar and speedometer readings are generally admissible and may be sufficient in themselves if there is reasonable proof of their accuracy." People v. Dusing, 5 N.Y.2d 126, 181 N.Y.S.2d 493, 155 N.E.2d 393, 394.

Notably there was scant evidence developed in the District Court to suggest the radar gun was faulty or that Kearney could have manipulated the device. These issues should have been investigated and developed by trial counsel.

**(b) Counsel failed to request the identity and/or non-identifying information of the CI.**

Trial counsel failed to challenge the reliability of the Confidential Informant. Because this CI set the stage for the subsequent "traffic stop/vehicle search."

Additionally, the identity or non-identifying information of the CI should have been revealed. In State of Minnesota v. Dexter, 941 N.W.2d 388 (2020). Key Elements in Establishing Informant Reliability

Investigators should take the following steps to achieve the totality of circumstances and thus probable cause under Illinois v. Gates, 462 U.S. 213 (1983): 1. Corroborate as much of the information as possible; 2. Determine how, where, when and under what circumstances the informant obtained the information; 3. Explain (without citing specific cases and names) use of the informants information in past criminal cases that led to arrests, convictions, seizures, etc.;4.Provided/reveal statements informants made; and 5. Identify the informant if it's safe to do so.

Specifically Dexter sought the following information:

(1) How long ... the [informant] has work[ed] for law enforcement; (2) Whether or not a written contract to cooperate was signed by the government and the informant; (3) What kind of consideration was received by the [informant] (4) whether or not any law enforcement officer communicated with and encouraged the [informant] to conduct surveillance of [Dexter] or others (5) the manner in which the [informant] was alleged to have made the observation.

The Dexter court remanded with directions.

Dexter cites the United States Supreme Court case of Roviaro v. United States, 353 U.S. 53 (1957). In Roviaro the question before the Court was:

In a prosecution for trafficking heroin, may the government conceal informant John Doe's identity if he helped to set up the sale of heroin and was present during the sale?

The Court held that:

"Roviaro's interest in preparing his defense outweighed the public interest in protecting John Doe's identity. The Court focused on the fundamental requirements of fairness, reasoning that where the identity of an informant or the contents of an informant's communications are relevant and helpful to a defense, the government's privilege must give way. Justice Burton also

noted that the charge in question required more than mere possession of heroin; Roviaro had the burden of justifying this possession, which underlined his need for access to material witnesses. John Doe was his only material witness.

Petitioner avers that it was reversible error to withhold non-identifying information of the CI that brought about the drug search, disguised as a traffic stop. Here Petitioner proceeded to trial. Prior to and during the trial the Government relied on the testimony from two officers, each who received information by text messages, either directly or indirectly by the alleged CI. Notably, neither officer corroborated the text messages or the CI's information . Petitioner contends this error violates his constitutional rights to effective assistance of counsel and fair adjudication of the suppression motions.

As persuasive authority Petitioner cites the cases of Portomeme v. United States, 221 F.2d 582 (5th Cir.1955); United States v. Conforti, 200 F.2d 365 (7th Cir 1953); Sorrentino v. United States, 163 F.2d 627 (9th Cir. 1947); and United States v. Lopez, No. 17-2517 (7th Cir. 2018). In each of these cases it was stated that the identity of such an informer must be disclosed whenever the informer's testimony could be relevant and helpful to the accused defense.

In Lopez, officers received a tip from an informant that was involved in a surveillance operation. The informant told law enforcement that he would get a call and then drive a white Malibu from a parking lot to a residential garage that was connected to a house where a man named Fausto would take the money out of the car and replace it with cocaine. The very next day officers confirmed the information and obtained a photo of him. Subsequently, Lopez was arrested and later moved for a motion to suppress under the Fourth Amendment. Lopez was

denied and he appealed to the Seventh Circuit, which was denied in the district court. The Seventh Circuit reversed and remanded.

Lopez is on point with this case in that the officers knew the informant's identity and nothing else and had no corroborating evidence, nor did officers know anything about his reliability. Officer's used the scant information received via text, from an untested CI, to set up surveillance of all roads into Dubuque. There was no information given that Petitioner would be speeding, so the verbiage about the "mission of the traffic stop" is just not true. This was always intended to be a drug search. The information given by the CI is that Thul would be driving one of his two pickup trucks, which contained methamphetamine and Petitioner was a passenger.. As it turns out Petitioner Harry was driving Thul's vehicle. Lopez opined that where officers know the informants identity, but very little else. In such circumstances it is required that an independent investigation be had to corroborate the reliability of the CI.

District court's determination of reasonable suspicion is dictated by Ornelas v. United States, 517 U.S. 690, 699 (1996). The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. Petitioner was seized without a warrant or probable cause, but he could have been seized briefly but lawfully under Terry v. Ohio, 392 U.S. 1, 27 (1968), if the officers had a reasonable suspicion that he was engaged in criminal activity. There was not reliable information to conduct a drug search, based on a CI who had never been proven reliable,.

Petitioner avers that because Williams was unsure if they met the standard for reasonable suspicion found in Ornelas he passed Thul's truck that he was following and sicked Kearney on Petitioner with the ruse of a traffic stop.

Because Terry stops are made without warrants, they are subject to limits. Two are important here. First, officers may carry out a Terry stop only when they "have a reasonable suspicion, grounded in specific and articulable facts" that an individual has committed a felony or is about to commit a crime. United States v. Hensley, 469 U.S. 221, 229 (1985). The reasonable suspicion standard is a lower bar than the probable cause standard necessary for an arrest, see United States v. Arvizu, 534 U.S. 266, 273–74 (2002), but the police are not entitled to detain a person for questioning based on only a hunch. Terry, 392 U.S. at 22; United States v. Wimbush, 337 F.3d 947, 949–50 (7th Cir. 2003). Second, since the "Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiation," the lower bar governing Terry stops requires that the scope of these stops be narrower than situations justified by probable cause. Terry, 392 U.S. at 28–29. More specifically, a Terry stop violates the Constitution when an officer "prolongs the stop, absent the reasonable suspicion ordinarily demanded" by the Fourth Amendment. Rodriguez v. United States, 135 S. Ct. 1609, 1615 (2015). When the reasonable suspicion justifying the stop evaporates, the stop must end. The Rodriguez issue was resolved on appeal.

Therefore, the analysis begins with the tip. When courts review Terry stops based on tips, they must consider the identity of the informant. See Florida v. J.L., 529 U.S. 266, 271 (2000) (anonymous tip cited as justification for a Terry stop lacked sufficient "indicia of reliability"—it "provided no predictive information and therefore left the police

This Court should consider this CI unreliable, thus any subsequent search and seizure suppressed. "An officer must have a reasonable, articulable suspicion that a person is involved in criminal activity unrelated to the traffic violation before the officer may expand the scope of the traffic stop and continue to detain the person for additional

investigation." <u>United States v. Carrate</u>, 122 F.3d 666, 668 (8th Cir.1997). When the basis of the stop is premised on information given by an untested CI it should be deemed unreliable.

Reasonable suspicion analysis must consider the factors known to Kearney and Williams at the time they expanded the scope of the initial traffic stop, not in isolation, but as a totality. <u>United States v. Bloomfield</u>, 40 F.3d at 918. The totality of the circumstances is that this so called traffic stop was all along a drug search.

Further, the "fruit of the poisonous tree" doctrine requires that all evidence obtained or derived from exploitation of that tainted information is inadmissible under the exclusionary rule. See generally <u>Wong Sun v. United States</u>, 371U.S. 471(1963). Thus, all evidence found during the illegal search of Defendant's vehicle and statements made by Defendant after the illegal detention are barred by the exclusionary rule.

### (c) Counsel failed to investigate the credibility of Officer Kearney

In Petitioner's first suppression hearing the Court found both Officer Williams and Kearney credible. The "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.")). "Any traffic violation, however minor, provides probable cause for a traffic stop. An otherwise constitutional traffic stop is not invalidated by the fact that it was mere pretext for a narcotics search." <u>United States v. Wright</u>, 512 F.3d 466, 471 (8th Cir. 2008) (internal quotations marks and citations omitted). Petitioner avers that this was not a constitutional traffic stop

It is well established that the temporary detention of individuals during a traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996). Thus, the probable cause or belief that probable cause exists for the stop must arise before the actual stop takes place. Although the defendant did admit to speeding in his conversation with Deputy Kearney, this has no bearing on whether probable cause or a belief based on probable cause existed at the time Deputy Kearney pulled the defendant over for allegedly speeding.. Deputy Kearney claims he did not have the CI's information prior to effecting the stop.

Counsel should have investigated the credibility of the statement that he did not have prior information about the text. It is inconceivable that he was not aware of the reason the Drug Task Force would have numerous police officers set up surveillance on roads leading to Dubuque waiting for the vehicle supposedly driven and owned by Thul. Williams first spotted the vehicle, pulled behind it and passed and had Kearney stop Petitioner on the ruse of a traffic stop. Counsel should have subpoenaed the radio logs and radie traffic between Williams and the numerous officers involved, as well as deposing all officers involved to find what they knew were told by Williams and what the game plan was to justify a "Terry Stop." If the game plan was a search Williams could have stopped Petitioner when he was behind him. If Petitioner was speeding he could have also pulled him over, which leaves one to wonder if Petitioner was in fact speeding. It was not brought out that Willaims told Kearney that Petitioner was speeding

in the vehicle he was just following. The whole traffic stop reeks of improprieties, that further investigation into the reliability of the radar gun possibly would cure.

Petitioner avers that without counsel finding what was intended by the officer at the behest of Williams it will never be known if there was really ever probable cause to stop Petitioner.

### (d) Counsel failed to let Petitioner review the discovery material

In this case counsel failed to go over the discovery material with Petitioner. While many criminal lawyers are reluctant to give incarcerated clients copies of discovery material, the client is entitled to review these materials. Johnson v. United States, 2014 WL 295157 (D.S.C. Jan. 27, 2014) (stating that "[w]hile a defendant generally has a right to review the discovery materials that will be used against him at trial . . . it is not improper to restrain counsel from leaving discovery. materials with the [defendant] in jail to safeguard the material contained therein") Ratliff v. United States, No. 11-cv-70034, 2013 WL 1567405, at *6 (D.S.C. Apr. 15, 2013).

The Iowa Rules of Professional Conduct Rule 32:1.4: COMMUNICATION states in pertinent part:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in rule 32:1.0(e), is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Iowa Rules of Professional Conduct or other law. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Explaining Matters

[5] The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to

consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in rule 32:1.0(e).

In this case Petitioner requested to view his discovery file but was never shown the file, contrary to the provisions of Iowa Rules of Professional Conduct Rule 32:1.4.

Counsel's failure to comply with the Rules of Professional Conduct Rule 32:1.4 denied Petitioner of the right to be to meaningfully participate in his defense, thus counsel was ineffective.

Petitioner's conviction and sentence should be vacated.

**GROUND TWO: Petitioner was denied his Sixth Amendment Right to Effective Assistance of Appellate Counsel .**

In Evitts v. Lucey, 469 U.S. 387 (1984)."' decided in 1984, the Court extended the right to counsel on appeal to include the right to effective assistance of counsel. Id. at 405.

In Evitts, the Court affirmed the reversal of an order dismissing an appeal for counsel's failure to file a "statement of appeal," as required by Kentucky's court rules." [2] The Court began its decision by noting that the case presented the "intersection of two lines of cases' ' Id. at 392.- those cases holding that the Fourteenth Amendment guarantees a criminal appellant certain minimum safeguards necessary to make the appeal "'adequate and effective,"" [3] and those cases holding that the Sixth Amendment right to counsel at trial comprehends the right to

---

[2] Id. at 405. The state rule required that appellants serve with the record on appeal a "statement of appeal" that contained the names of appellants and appellees, counsel, the trial judge, the date of judgment, the date of notice of appeal, and other miscellaneous information. Id. at 389.
[3] Id. (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)).

effective assistance of counsel. Evitts, 469 U.S. at 392 (citing Cuyler v. Sullivan, 446 U.S. 335 (1980)).

In recognizing the right to effective assistance of counsel on appeal, however, the Court emphasized that the right is a due process right; that is, one based on fundamental fairness secured entirely and directly by the Due Process Clause of the Fourteenth Amendment, rather than through the Equal Protection Clause or by incorporation of the Sixth Amendment.

In this case appellate counsel Scheetz was ineffective for failing to raise an issue preserved at trial for appellate review that would have made a difference in the outcome of the said review. In this appeal counsel raise three issues:

I. THE DOG SNIFF IMPROPERLY EXTENDED THE STOP AND VIOLATED DEFENDANT'S FOURTH AMENDMENT RIGHTS AND THE OFFICERS LACKED PROBABLE CAUSE OR REASONABLE SUSPICION TO BELIEVE THAT DEFENDANT WAS TRANSPORTING METHAMPHETAMINE

II. ADMISSION OF THE TESTIMONY OF EDGAR HERNANDEZ, KYLE CHYMA, AND ASHLEY LAUFENBERG REGARDING PRIOR ALLEGED DRUG TRANSACTIONS VIOLATED RULE 404(b)

III. DEFENDANT SHOULD HAVE BEEN ALLOWED TO INTRODUCE DENNIS THUL'S PRIOR CONVICTIONS FOR CONSPIRACY TO MANUFACTURE METHAMPHETAMINE (2000) AND POSSESSION OF METHAMPHETAMINE (2003).

**Counsel failed to seek appellate review for withholding the identity of the Confidential Informant (CI) and/or Non-identifying information**

As stated above there was a need to find out who the informant was or non-identifying information as to what part he played in the delivery of methamphetamine to Dubuque. Because "An officer must have a reasonable, articulable suspicion that a person is involved in criminal activity unrelated to the traffic violation before the officer may expand the scope of the traffic stop and continue to detain the person for additional investigation." United

States v. Carrate, 122 F.3d 666, 668 (8th Cir.1997) appellate counsel should have raised the issue of the identity of the CI.

"Reasonable suspicion may be based on an informant's tip where the tip is both reliable and corroborated." United States v. Bell, 480. F.3d 860, 863 (8th Cir. 2007) (citing Adams v. Williams, 407 U.S. 143, 147 (1972); United States v. Jacobsen, 391 F.3d 904, 906 (8th Cir. 2004)). When "'an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.'" United States v. Manes, 603 F.3d 451, 456 (8th Cir. 2010) (quoting Alabama v. White, 496 U.S. 325, 331 (1990)). "The reasonableness of such an inference is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior." (Id. (internal citations omitted)). The Court must consider the totality of the circumstances to determine whether reasonable suspicion existed to effect a traffic stop. (Id.).

In this case the CI had never provided information before, thus, could not be deemed reliable and gave the officer vague information of who would be driving, what vehicle. While this was brought out the identity and/or non-identifying information from the CI was necessary for a fair proceeding. See State of Minnesota v. Dexter, 941 N.W.2d 388 (2020).(persuasive).

**Respectfully submitted under the penalty of perjury pursuant to 28 U.S.C. § 1746.**

Scot Michael Harry
Reg. No. 17173-029
USP Leavenworth
P.O. Box 1000
Leavenworth, KS 66048