IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (DUBUQUE) DIVISION

SCOTT MICHAEL HARRY, )
)
Movant, ) Nos.  20-CV-01046
) 17-CR-01017
vs. )
)
UNITED STATES OF AMERICA, )
)
Respondent. )

**MEMORANDUM RE: GOVERNMENT'S RESISTANCE TO
MOVANT'S PETITION UNDER 28 U.S.C. § 2255**

**TABLE OF CONTENTS**

I.  Introduction...............................................................................................2

II.  Background and Procedural History......................................................2

   A.  Course of the Proceedings...........................................................2

   B.  Sentencing ......................................................................................3

   C.  Direct Appeal.................................................................................4

   D.  Movant's § 2255 Motion ..............................................................4

III.  Standards for Relief Pursuant to § 2255..............................................5

   A.  Reviving Procedurally Defaulted Claims by Showing Cause and
        Actual Prejudice ...........................................................................6

   B.  Reviving Procedurally Defaulted Claims by Showing
        Fundamental Miscarriages of Justice .......................................8

IV.  Legal Analysis of Movant's Arguments................................................9

   A.  Movant's Ineffective Assistance of Counsel Claims................9

        1.  Counsel's Alleged Failure to Investigate Movant's Case
             and Review Discovery Materials With Movant........................12

       2.      Counsel's Failure to Raise an Issue on Appeal .......................... 19

   B.     Movant Is not Entitled to an Evidentiary Hearing .............................. 21

## I.   *Introduction*

Respondent, United States of America, respectfully submits the following memorandum in support of its resistance to Petitioner's (hereafter "Movant") motion under Title 28, United States Code, Section 2255.  (CvD 1).[1]

## II.   *Background and Procedural History*

### A.   *Course of the Proceedings*

On June 7, 2017, defendant was indicted and charged with possession with intent to distribute 500 grams or more of methamphetamine on February 10, 2017. (DCD 2, PSR ¶ 1).   On July 24, 2017, defendant filed a motion to suppress the evidence seized during the February 10, 2017, vehicle stop.  (DCD 20).  After conducting an evidentiary hearing on August 3, 2017, the magistrate judge issued a detailed report and recommendation that recommended denying defendant's motion to suppress.  (DCD 34).

On October 13, 2017, defendant supplemented his motion to suppress.  (DCD 53).  After reviewing the supplement and receiving argument, the magistrate judge,

---

[1] The following abbreviations will be used throughout this Memorandum: 1) "DCD" refers to Movant's criminal docket and is followed by a docket entry number; 2) "CvD" refers to Movant's civil docket and is followed by a docket entry number; 3) "PSR" refers to the Presentence Investigation Report and is followed by a paragraph number; 4) "Suppress TR" refers to the transcript of the suppression and is followed by a page number; 5) "TTR" refers to the December 19-20, 2017 trial transcript; and 6) "STR" refers to Movant's sentencing hearing transcript and is followed by a page number.

Case 2:20-cv-01046-LTS-MAR   Document 8-1   Filed 04/05/22   Page 2 of 22

the Honorable C.J. Williams, issued a supplemental report and recommendation, again recommending denial of defendant's motions to suppress. (DCD 55). On November 14, 2017, this court adopted the reports and recommendations and denied defendant's motion to suppress. (DCD 60).

On November 29, 2017, defendant filed a motion in limine seeking to limit (1) evidence of defendant's prior conviction; (2) prior acts of his drug trafficking; (3) defendant's incarcerated status; and (4) the fact that an informant's tip led to defendant's stop. (DCD 65). This court granted defendant's motion regarding the informant, defendant's incarcerated status, and the defendant's 2010 conviction for distribution of drugs to a minor. (DCD 71). This court denied defendant's motion in limine regarding the recent drug trafficking activity pursuant to Federal Rule of Evidence 404(b). (DCD 71).

On December 13, 2017, the United States filed a motion in limine seeking to exclude evidence that Dennis Thul, the other occupant of the vehicle being driven by the defendant: (1) previously used the truck; and (2) had been involved with drugs or been convicted of drug-related offenses and operating a vehicle while intoxicated. (DCD 72). This court announced its ruling orally (TTR 99-102) and also issued a detailed order setting forth its analysis after trial (DCD 87). On December 20, 2017, the jury returned a guilty verdict. (PSR ¶ 1).

### B.    *Sentencing*

On June 1, 2018, the court held a sentencing hearing and varied from the sentencing guidelines to impose a below-the-guidelines sentence of 280 months' imprisonment. (DCD 101, 102).

### C.    Direct Appeal

On direct appeal defendant raised three issues.  Defendant claimed: (1) the vehicle stop was unduly prolonged without reasonable suspicion of drug trafficking to subject the truck driven by defendant to a dog sniff; (2) the trial court's admission of Rule 404(b) evidence was an abuse of discretion; and (3) the district court's denial of some of the defendant's proffered "reverse 404(b)" evidence was an abuse of discretion.  *United States v. Harry*, 930 F.3d 1000 (8th Cir. 2019).  The Court of Appeals affirmed defendant's conviction.  *Id.* at 1008

### D.    Movant's § 2255 Motion

On October 13, 2020*,* Movant filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (CvD 1).  As the one-year limit on filing a § 2255 motion begins when the Supreme Court denies a Movant's petition for a writ of certiorari, Movant's § 2255 motion is timely.  *Campa-Fabela v. United States*, 339 F.3d 993, 993-94 (8th Cir. 2003).

Defendant asserts he received ineffective assistance at trial when counsel did not: (1) "effectively investigate the calibration of the radar gun used to premise the 'traffic stop'" (CvD 1-1 at 1); (2) request the identity of a cooperating individual that provided information leading to defendant's stop (CvD 1-1 at 3); (3) "investigate the credibility of Officer Kearney" (CvD 1-1 at 8); and (4) let defendant personally review discovery materials while defendant was incarcerated (CvD 1-1 at 10).  Defendant also alleges ineffective assistance by appellate counsel for failing to seek appellate review of the alleged withholding of the identity of the cooperating individual.  (CvD 1-1 at 13).

4

### III. Standards for Relief Pursuant to § 2255

Section 2255 provides an avenue for relief whereby a Movant can move a court "to vacate, set aside, or correct" a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). This statute "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (*quoting Davis v. United States*, 417 U.S. 333, 343 (1974)). However, Congress did not enact § 2255 to provide defendants with an additional appeal of a judgment. *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (stating that "habeas relief is an extraordinary remedy which 'will not be allowed to do service for an appeal'") (*quoting Bousley v. United States*, 523 U.S. 614, 621 (1998)). As a post-judgment collateral remedy, it is severely limited in scope because after "the defendant's chance to appeal has been waived or exhausted, [courts] are entitled to presume [the defendant] stands fairly and finally convicted." *Frady*, 456 U.S. at 164.

It is well-established that issues already decided on direct appeal are not cognizable under § 2255 collateral review. *See*, e.g., *Bear Stops*, 339 F.3d at 780 (dismissing movant's § 2255 claim that counsel ineffectively failed to argue an issue

on appeal after finding that, in fact, movant had raised the issue and the appellate court had explicitly rejected it); *United States v. Smith*, 843, F.2d 1148, 1149 (8th Cir. 1988) ("[W]here the sufficiency of the evidence is decided on direct appeal, review of the issue in a § 2255 motion is precluded."). Furthermore, "[s]ection 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, …or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (citing *Frady*, 456 U.S. at 167-68).

### A. *Reviving Procedurally Defaulted Claims by Showing Cause and Actual Prejudice*

For those errors that movant did not contemporaneously object to or raise on appeal, the "cause and prejudice" standard for post-conviction relief requires that movant show both "cause excusing his double procedural default" and "actual prejudice resulting from the errors of which he complains." *Frady*, 456 U.S. at 168. It is a very exacting standard of review, such that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* at 165.

"Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice. To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); *see also Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) ("Ineffective assistance of appellate counsel

6

may constitute cause and prejudice to overcome a procedural default."). Since ineffective assistance claims are appropriately raised on collateral review, these claims generally must be addressed according to their merits in a § 2255 motion. *United States v. Jones*, 586 F.3d 573, 576 (8th Cir. 2009) ("[O]rdinarily, [courts] do not address claims of ineffective assistance of counsel on direct appeal because such claims usually involve facts outside of the existing record and are therefore best addressed in post-conviction proceedings under 28 U.S.C. § 2255.").

Any other claims are procedurally barred from collateral review absent an express showing of cause and actual prejudice. The Supreme Court has stated that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Bousley*, 523 U.S. at 622 (*quoting Reed v. Ross*, 468 U.S. 1, 16 (1984)). Alternatively, other circumstances outside of movant's control might demonstrate cause for a procedural default. *See Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (noting but declining to address whether it was proper that the district court found cause excusing movant's procedural default where a state employee told movant the wrong deadline for filing a motion).

To demonstrate procedural bar prejudice, [a movant] 'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (*quoting Frady*, 456 U.S. at 170). Particularly, movant must at the very least demonstrate

7

that, absent the alleged error, there is a "substantial likelihood" that the outcome of movant's case would have been different. *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (movant was not actually prejudiced by erroneous jury instruction because a properly instructed jury also would have convicted him).

### B. Reviving Procedurally Defaulted Claims by Showing Fundamental Miscarriages of Justice

The "fundamental miscarriage of justice exception . . . is only available to a petitioner who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (*quoting Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995)); *see also Johnson,* 278 F.3d at 844 ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 petitioner] must show 'either cause and actual prejudice, or that he is actually innocent.'") (*quoting Bousley*, 523 U.S. at 622). "Actual innocence" is factual innocence, as distinguished from mere legal innocence, and "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006); *see also Niederstadt v. Nixon*, 505 F.3d 832, 840 (8th Cir. 2007) ("This [miscarriage of justice] exception to default 'is concerned with actual as compared to legal innocence.'") (*quoting Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *Johnson*, 278 F.3d at 844 (stating that, for actual innocence to lift a procedural bar, "'petition must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him'") (*quoting Bousley*, 523 U.S. at 623).

8

## IV.  Legal Analysis of Movant's Arguments

### A.  Movant's Ineffective Assistance of Counsel Claims

The Sixth Amendment of the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  This right guarantees a criminal movant effective counsel both at trial and on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 395 (1985).  As noted above, claims of ineffective assistance of counsel are properly raised in a § 2255 motion because these claims often involve facts outside the record.  *Jones*, 586 F.3d at 576.  Such claims can excuse a procedural default, but "[i]n order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation."  *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004).  To establish ineffective counsel, a movant "must demonstrate: (1) his attorney's performance was deficient and fell outside the range of reasonable professional assistance; and (2) he suffered prejudice by showing that, absent counsel's ineffective assistance, there is a reasonable probability that the result of the proceeding would have been different."  *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (*citing Strickland v. Washington*, 466 U.S. 668 (1984)).

When evaluating a counsel's performance under the first prong of this test, courts "operate on the 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'"  *Id.* (*quoting Strickland*, 466 U.S. at 689).  "Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical.  If there is no bona fide defense to the charge, counsel

9

cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, 466 U.S. 648, 657 (1984). In addition, it is well settled that "[t]rial counsel's strategic decisions are 'virtually unchallengeable unless they are based on deficient investigation, in which case the "presumption of sound trial strategy . . . founders on the rocks of ignorance."'" *Forsyth v. Ault*, 537 F.3d 887, 892 (8th Cir. 2008) (*quoting Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006), *in turn quoting White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005)) (decisions when to cut off investigation of an issue and what defenses to present are unchallengeable strategic ones); *see also James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) ("[R]easonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."). Courts also "do not evaluate counsel's performance using 'the clarity of hindsight, but in light of the facts and circumstances at the time of trial.'" *Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) (*quoting Carter v. Hopkins*, 92 F.3d 666, 669 (8th Cir. 1996)); *see also Evans*, 371 F.3d at 445 ("[W]e have frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under *Strickland*.").

A movant also faces an uphill battle proving prejudice under the second prong of the test for ineffective assistance of counsel. Mere speculation does not establish prejudice. Instead, a movant must demonstrate that counsel's incompetent acts "'undermine confidence in the outcome,'" or present a *reasonable*

*probability* that the outcome would have been different if not for those acts. *Kemna*, 590 F.3d at 596 (*quoting Strickland*, 466 U.S. at 694); *see also Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) ("'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'") (*quoting Strickland*, 466 U.S. at 693). "'[I]n determining the existence *vel non* of prejudice, the court must consider the totality of the evidence before the judge or jury.'" *Kemna*, 590 F.3d at 596 (*quoting Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

Since a movant must show both deficient performance and prejudice, a court reviewing ineffective assistance claims need only address one prong if either fails. See *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006) ("If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient.") (internal quotation omitted); *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) ("Having found [movant's] counsel's performance adequate, we need not address the issue of prejudice under the second prong of the *Strickland* test."). Also, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *see also United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief."); *United States v. Robinson*, 301 F.3d 923, 925 n.3 (8th Cir. 2002) (noting that the Eighth Circuit has rejected the cumulative error doctrine and that "the numerosity of the alleged deficiencies does

11

not demonstrate by itself the necessity for habeas relief"); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.").

With these standards in mind, the government embarks on an analysis of movant's claims for relief based on ineffective assistance of counsel. Movant claims his counsel at the trial level was ineffective by failing: (1) to "effectively investigate the calibration of the radar gun" used in the stop (CvD 1-1 at 1); (2) to request the identity of the confidential informant (CvD 1-1 at 3); (3) to "investigate the credibility" of one of the officers involved in the stop (CvD 1-1 at 8); and (4) to let Movant personally review discovery materials (CvD 1-1 at 10). Movant also claims his appellate counsel was ineffective by failing to seek appellate review of the "withholding the identity of the confidential informant (CvD 1-1 at 13).

### 1. *Trial Counsel's Alleged Failure to Investigate Movant's Case and Review Discovery Materials With Movant*

Movant claims his counsel at the trial level was ineffective by failing: (1) to "effectively investigate the calibration of the radar gun" used in the stop (CvD 1-1 at 1); (2) to request the identity of the confidential informant (CvD 1-1 at 3); (3) to "investigate the credibility" of one of the officers involved in the stop (CvD 1-1 at 8); and (4) to let Movant personally review discovery materials (CvD 1-1 at 10). Decisions as to what defenses to present at trial, and therefore what defenses have merit, are strategic decisions for counsel to make. *See Forsyth*, 537 F.3d at 892-93 (counsel's decision not to pursue or present insanity defense in movant's case was a strategic choice entitled to presumption of reasonableness). Another related

"strategic decision[] is that of 'reasonably deciding when to cut off further investigation'" into those claims that counsel does not believe deserve attention. *Id.* at 892 (*quoting Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006)). The Supreme Court has defined the degree of "deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The *Strickland* Court further explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.* In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91 (emphasis added). "Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what [type of investigation] is reasonable." *Id.* at 688-89. To assess prejudice, the court should "reweigh the [evidence undiscovered due to lack of investigation] against the totality of [] evidence" to determine whether the outcome of movant's case would have been different. *Wiggins*, 539 U.S. at 535.

In this matter defendant, claims counsel failed (1) to "effectively investigate the calibration of the radar gun" used in the stop. (CvD 1-1 at 1). Defense counsel Nathan noted he did not investigate that matter because he chose to cross-examine the officer on the matter. (CvD 3 at 2). Counsel Scheetz also made the strategic

13

choice to not investigate the radar gun because defendant admitted he was speeding, and the Court determined the stop was also independently based upon a corroborated tip provided by a confidential informant. (CvD 6 at 1). Counsel's strategic choice to not litigate the precise accuracy of a speed gun that had no ultimate impact on the legality of the stop, was not error, and does not rise to the level of prejudicial error or ineffective assistance of counsel.

Next, movant claims trial counsel were ineffective for failing to request the identity of the confidential informant. (CvD 1-1 at 3). The confidential informant (CI) provided his first tip, which indicated that movant was transporting a large amount of methamphetamine to Dubuque, Iowa, from out of state and would be returning to the Dubuque area around noon. (DCD 60; Suppress TR 50, 64). The CI indicated that movant would be traveling with a passenger and that movant would be driving a newer white single-cab pickup truck registered in the name of Dale Thul, the father of Dennis Thul. (DCD 60; Suppress TR 50). The CI further informed officers that movant would be traveling to Dubuque on U.S. Highway 151. (DCD 60; Suppress TR 51). The law enforcement officers checked on vehicles registered to Dale Thul and found two white pickup trucks registered to him. (Suppress TR 51-52).

A CI's first 'tip,' like a tip provided by an anonymous caller, can be used in the totality of the circumstances to give officers reasonable suspicion to conduct a stop. Officers may deem an informant's information to be credible if it is collaborated by predictive information. *United States v. Winarske*, 715 F.3d 1063,

1067 (8th Cir. 2013); *see also United States v. Manes*, 603 F.3d 451, 456 ("As the Supreme Court has made clear, '[when] an informant is shown to be right about some things, he is probably right about other facts ….'").

The CI provided detailed, predictive information, such as the time of arrival, the description of the vehicle, the route taken, the registration information, and the number of occupants. (DCD 60; Suppress TR 50-52). The fact that this was the first time the CI had provided information to law enforcement is offset by the extensive level of detail that was collaborated by the officers and established the CI's credibility. *See Alabama v. White*, 496 U.S. 325, 331 (1990) (finding an anonymous informant's tip that described an individual's identity, location, vehicle, approximate time of departure and destination, in addition to a statement that the individual would be in possession of cocaine, had been sufficiently corroborated to generate reasonable suspicion and justify an investigative stop).

Counsel Nathan noted the actual identity was not necessary for the fair determination of the matter since the informant had not previously provided information, so the focus of the hearing was the detailed nature of the tip. (CvD 3 at 2-3). Counsel Scheetz stated there was "no legal basis for a non-frivolous motion to seek the identity of the informant," and counsel knew about the contact the CI had with law enforcement, the CI's criminal history and payment history before the suppression hearing. (CvD 6 at 2-3).

In order to obtain the pretrial disclosure of the identity of an informant, a defendant bears the burden of demonstrating the need for disclosure. *United States*

15

*v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991) (citing *Roviaro v. United States*,

353 U.S. 53, 57 (1957).   In deciding whether to order disclosure of an informant's

identity,

> [C]ourts must consider the "particular circumstances of each case,
> taking into consideration the crime charged, the possible defenses, the
> possible significance of the informer's testimony, and other relevant
> factors." [*Roviaro*] at 62, 77 S.Ct. at 629.   Ultimately, "one of the most
> relevant factors to be weighed by the court [in determining whether to
> order disclosure] is whether or not the evidence is material to the
> accused's defense or a fair determination of the cause." *United States
> v. Barnes*, 486 F.2d 776, 778 (8th Cir.1973) (emphasis in original). A
> trial court abuses its discretion if it orders disclosure absent a showing
> of materiality. *United States v. Grisham*, 748 F.2d 460, 463 (8th
> Cir.1984).   In order to override the government's privilege of
> nondisclosure, defendants must establish beyond mere speculation
> that the informant's testimony will be material to the determination of
> the case. *Id*. at 464.

*United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991).

"Failure to file a pretrial motion is not per se ineffective assistance of

counsel." *Kim v. United States*, No. CRIM 3:07-CR-31, 2009 WL 2151124, at *2

(D.N.D. July 15, 2009) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)).

> Furthermore, failure to make a pretrial motion is not ineffective
> assistance of counsel if there is not a reasonable probability of success.
> *White v. Helling*, 194 F.3d 937, 942 (8th Cir.1999).   "Judicial scrutiny
> of counsel's performance is highly deferential, indulging a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional judgment." *Armstrong v. Kemna*, 534 F.3d 857,
> 863 (8th Cir.2007) (*quoting Strickland v. Washington*, 466 U.S. 668,
> 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

*Kim v. United States*, No. CRIM 3:07-CR-31, 2009 WL 2151124, at *2 (D.N.D. July

15, 2009).   The predictive details of the tip, criminal history, payment history and

timeliness of the tip were the key elements of information needed to litigate the

16

vehicle stop. Movant has not established that the identity of the tipster was a material matter such that counsel was required to pursue the matter. Counsel was not ineffective for not filing a motion to disclose the name of the confidential informant with no reasonable probability of success and no impact on the case.

Next, movant claims counsel failed to "investigate the credibility" of one of the officers involved in the stop. (CvD 1-1 at 8). Movant claims its is "inconceivable" that the deputy who conducted the stop would not know about the text of the tip. (CvD 1-1 at 9). Movant claims "counsel should have subpoenaed the radio logs and radio traffic between [Deputy] Williams and the numerous officers involved, as well as deposing all officers involved. . . ." Beyond speculating about what Deputy Kearney knew or didn't know about movant, when he stopped the vehicle, movant fails to set forth the impact the Deputy Kearney's state of mind would have had on his case. On appeal, the Eighth Circuit found

> there were two purposes for the stop of Harry's vehicle: one was for his traffic violation and the other was for his suspected transportation of illegal drugs. Even if the dog sniff had extended the traffic stop, the extension would have been permissible, as the CI's tip provided reasonable suspicion for Deputy Kearney to perform the drug search.

*United States v. Harry*, 930 F.3d 1000, 1005 (8th Cir. 2019).

As the Court knows, there is no general right for a party in a federal criminal case to conduct depositions. *See*, Fed. R. Crim. P. 15. Defendant speculates that a subpoena to obtain radio logs or audio of conversations between Deputy Williams and other officers exist, and that they would have undermined Deputy Kearney's testimony. Both Deputy Kearney and Deputy Williams testified at the suppression

hearing and were vigorously cross-examined. (CvD 3 at 3; CvD 6 at 2). Deputy Williams also testified at length during trial and was subject to cross examination. (TTR 31-80, 219-220). Deputy Kearney testified at trial as a defense witness. (TTR 189-197). Attorney Nathan did not request any radio logs and noted that the evidence would "not inform whether a reasonable officer had reasonable suspicion or probable cause to conduct a traffic or drug seizure." (CvD 3 at 3). Attorney Scheetz noted the cross-examination of Deputy Kearney allowed the court to determine his credibility and that most of the interaction during the stop was recorded on video. (CvD 6 at 2).

The record about what the deputies' knowledge was sufficient to allow the court to judge their credibility. Furthermore, even if Deputy Kearney knew everything about the tip and desired to stop the defendant for a drug offense, that knowledge would not change the decision by the district court to deny defendant's motion to suppress finding the stop was both a stop based upon the corroborated tip and a stop for speeding that was not elongated by the dog sniff. Counsel was not ineffective for not seeking additional discovery of Deputy Kearney's state of mind when he initiated the stop.

Finally, movant claims trial counsel erred by not letting movant personally review discovery materials. (CvD 1-1 at 10). Both counsel note that they met regularly with movant and reviewed the charges and the evidence against him. (CvD 1-1 at 2; CvD 6 at 2). Counsel Scheetz indicated he "personally reviewed the discovery materials with defendant on several occasions" and showed discovery

18

materials to movant. (CvD 6 at 2). Movant's allegation is not supported by the evidence obtained from the attorneys. Insofar as movant claims he should have received a personal copy of the discovery file to review in the jail while he was awaiting trial, giving copies of those materials to movant was precluded by the stipulated discovery order. (DCD 9 at 2-3). An attorney does not commit error by following the court's orders. Movant has not demonstrated any error of counsel and no prejudicial impact upon his case.

### 2. *Counsel's Failure to Raise an Issue on Appeal*

Movant claims his appellate counsel was ineffective for failing to seek appellate review of an issue that was not raised in the district court, specifically obtaining the name of the informant or "non-identifying information as to what part he played in the delivery of methamphetamine to Dubuque." (CvD 1-1 at 13). As noted above the fact that the CI had not provided previously provided any information, the defense was given information that the CI had a "substantial criminal history and that the informant received money for information." (CvD 3 at 3). Defense counsel at the trial level determined that seeking disclosure of the actual identity of the informant was not needed to litigate the suppression motion. (CvD 3 at 2). When an informant has no record of other tips being given, the informant is treated akin to a mere tipster, where the focus of the litigation is whether the informant provided predictive details. *United States v. Harry*, 930 F.3d 1000, 1006 (8th Cir. 2019) ("An informant may ... prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013)).

The *Harry* Court also detailed the predictive information provided by the informant in this case and found:

> The information was specific rather than generic and therefore unlikely available to someone without reliable insight into Harry's activities. Based on that information, Deputy Kearney had reasonable suspicion to search the truck regardless of the speeding violation.

*United States v. Harry*, 930 F.3d 1000, 1006 (8th Cir. 2019).

Defense counsel has a duty to investigate potential claims to assert on movant's behalf, but has considerable discretion in strategically choosing which claims to present. *See United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008) ("[A]bsent contrary evidence, 'we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'") (*quoting Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998)). This is because "'[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.'" *Id.* (*quoting Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Movant's counsel asserted some claims on appeal, which indicates that he was familiar with movant's case and competently chose to assert the strongest claims:

> When appellate counsel competently asserts some claims on a movant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

*United States v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (<u>quoting</u> *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Defense counsel reasonably chose not to present

the relatively weak claim that the identity of the informant should have been disclosed. As noted above, this issue was not raised in the district court, as both defense counsel determined the identity of the informant was not material to the defense. The fact that the issue was not raised in the district court would have presented a significant obstacle to appellate counsel raising the issue on appeal.

To prove prejudice, movant "must show that 'the result of the proceeding would have been different' had he raised the [] issue on direct appeal." *Brown*, 528 F.3d at 1033 (*quoting Becht*, 403 F.3d at 546) (counsel's failure to raise Confrontation Clause claim did not prejudice movant). Movant cannot prove he was prejudiced at the trial or appeal levels by counsel not learning the identity of an informant who was not identified as a witness. The informant's value to the stop was not determined by who he or she was, but rather the detailed, predictive information the informant provided to support the stop of the vehicle. Movant cannot show the results of the case, specifically his motion to suppress, would have been different if his counsel had raised this issue on appeal.

## B. *Movant Is not Entitled to an Evidentiary Hearing*

"A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 968 (W.D. Mo. 2008) (*citing Sanders v. United States*, 341 F.3d 720, 721 (8th Cir. 2003)). In other words, a petitioner is "entitled to a hearing on a § 2255 motion 'unless the motion, files, and record conclusively show'

that the defendant is not entitled to relief." *United States v. Regenos*, 405 F. 3d 691, 694 (8th Cir. 2005) (*quoting Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001)).

Respectfully submitted,

TIMOTHY T. DUAX
Acting United States Attorney

By, */s/ Patrick J. Reinert*

PATRICK J. REINERT
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, IA  52401-2101
319-363-6333
319-363-1990 (Fax)
Pat.Reinert@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system.

I hereby certify that a copy of this document was served on the parties or attorneys of record, shown below, by:

X  U.S. Mail   ❏ Fax   ❏Hand Delivery

UNITED STATES ATTORNEY

BY:   _s/lsm_____

Copy to:
Scott Michael Harry, Reg. #17173-029
FCI Edgefield
Federal Correctional Institution
P. O. Box 725
Edgefield, SC  29824

22