# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

SCOTT MICHAEL HARRY,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.

No. C20-1046-LTS
(Crim. No. CR17-1017-LTS)

**MEMORANDUM OPINION AND ORDER**

_____

## I. INTRODUCTION

This matter is before me on Scott Michael Harry's pro se motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Harry alleges that he received ineffective assistance of counsel. Harry has also filed a motion (Doc. 11) to amend his reply brief and a motion (Doc. 12) to withdraw the motion to amend. Harry's prior attorneys have filed court-directed responses (Docs. 3, 6), the Government has filed a resistance (Doc. 8) and Harry has filed a reply (Doc. 9). I find that an evidentiary hearing is not required.

## II. BACKGROUND

On June 7, 2017, the grand jury returned an indictment (Crim. Doc. 2) charging Harry with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Assistant Federal Public Defender Christopher Nathan was appointed to represent Harry on June 22, 2017. Crim. Doc. 6. Nathan filed a motion (Crim. Doc. 20) to suppress evidence and represented Harry during the suppression hearing on August 3, 2017. Crim. Doc. 30. However, on August 8, 2017, Nathan filed a motion to withdraw due to a conflict of interest. Crim. Doc. 32. The court granted that motion and appointed attorney Raphael Scheetz to represent Harry.

Crim. Doc. 36. Scheetz filed a supplemental motion (Doc. 53) to suppress. Ultimately, both the original motion to suppress and the supplemental motion were denied. Doc. 60.

The case proceeded to trial and, on December 21, 2017, the jury returned a verdict of guilty. Crim. Doc. 82. On May 31, 2018, I sentenced Harry to 280 months' incarceration. Crim. Doc. 101. The Eighth Circuit affirmed the judgment on July 22, 2019. Crim. Doc. 116.

Harry filed his § 2255 motion on October 13, 2020, raising numerous claims of ineffective assistance of counsel. Doc. 1. I filed an initial review order (Doc. 2) in which I directed Harry's prior counsel to file responses to Harry's allegations. Those responses (Docs. 3, 6) have been filed. The Government then filed its response (Doc. 8) and Harry filed a reply (Doc. 9). Harry also filed a motion (Doc. 11) to amend his reply brief and a motion (Doc. 12) withdraw his motion to amend.

### III.   MOTION TO AMEND REPLY

In his motion to amend his reply brief, Harry contends that he received assistance in completing his pro se reply (Doc. 9) to the Government's resistance and that he did not intend to state that "Movant voluntarily abandons his claim of ineffective appellate counsel." Doc. 11 at 1. Harry states in his motion to amend that he does not wish to abandon the claim as stated in the reply brief and asks the court for permission to amend the brief by including the language "Appellant counsel failed to advance the argument that the government withheld the identity of the confidential informant in violation of the law." *Id.* In his motion (Doc. 12) to withdraw, Harry states he would like to withdraw his motion to amend. Given the confused nature of Harry's filings, both his motion to amend (Doc. 11) and motion to withdraw (Doc. 12) will be denied. I will proceed to address each of the claims Harry made in his original § 2255 motion (Doc. 1).

## IV.   APPLICABLE STANDARDS

### A.   *Section 2255 Standards*

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. See 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

## B.     *Ineffective Assistance of Counsel Standards*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

4

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining Strickland prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

## V. ANALYSIS

Harry makes the following claims of ineffective assistance of trial counsel: (1) failure to investigate the calibration of the radar gun, (2) failure to request the identity of the confidential informant (CI), (3) failure to investigate the credibility of Deputy Kearney and (4) failure to allow Harry to review discovery materials. Harry also argues that his appellate counsel was ineffective for failing to seek appellate review of the disclosure of the CI's identity.

5

## 1. Ineffective Assistance of Trial Counsel
### a. Failure to Investigate the Calibration of the Radar Gun

Generally, "[t]rial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary." *Kemp v. Kelley*, 924 F.3d 489, 500 (8th Cir. 2019). The question is whether "trial counsel was unreasonable in not exploring an alleged defense." *United States v. Vazquez-Garcia*, 211 F. App'x 544, 545 (8th Cir. 2007). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). However, "'strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.'" *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)). Thus, while "'failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective' . . . [the defendant] still needs to 'make a substantial showing that, but for counsel's failure . . . , there is a reasonable probability that the result of his trial would have been different.'" *Vazquez-Garcia*, 211 F. App'x at 545 (quoting *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir.1994)).

Harry argues that his counsel were ineffective for failing to investigate the calibration of the radar gun used in the stop, which left unanswered questions as to the accuracy of the radar gun and whether Deputy Kearney could have manipulated the radar gun. Doc. 1-1 at 1-3. As a result, Harry alleges there was not probable cause for the traffic stop.

In his affidavit, Nathan states that he chose to "thoroughly cross-examine" Deputy Kearney on the reliability of the gun instead of requesting information about the gun from its manufacturer. Doc. 3 at 2. Indeed, on cross-examination, Nathan pressed Deputy Kearney on the accuracy and calibration of the radar gun. Crim. Doc. 44 at 15-34. Kearney testified that he calibrated the radar gun earlier in the week of the stop using

6

tuning forks and that the gun's manufacturer calibrated the device once a year. Crim. Doc. 44 at 17, 19.

In his affidavit, Scheetz states that investigating the gun was unnecessary because Harry admitted to speeding. Doc. 6 at 1. Further, Scheetz acknowledges that the court found that a corroborated tip from the CI served as an independent basis for the stop. *Id.* Based on Nathan's and Scheetz's affidavits, the Government argues that Harry's counsels' "strategic choice to not litigate the precise accuracy of a speed gun that had no ultimate impact on the legality of the stop, was not error, and does not rise to the level of prejudicial error or ineffective assistance of counsel." Doc. 8-1 at 14.

I agree. Harry has not shown that his counsel acted unreasonably by failing to further investigate the calibration of the radar gun. Nathan did investigate the calibration of the radar gun and filed a motion to suppress evidence obtained during the traffic stop, arguing that Deputy Kearney did not have probable cause to stop the vehicle. Crim. Doc 20. During the suppression hearing, Nathan made the strategic decision to extensively cross-examine Kearney about the radar gun and its calibration. Crim. Doc. 44. The decision not to further investigate the calibration of the radar gun was reasonable. *See Anderson v. Kelley*, 938 F.3d 949, 955 (8th Cir. 2019) (finding counsel was not deficient for failing to investigate PTSD after presenting evidence of the effects of childhood abuse on adult life).

Even if I were to assume that counsels' performance was defective for failing to further investigate the radar gun's calibration, that failure did not prejudice Harry. *See Scarberry v. Iowa*, 430 F.3d 956, 962 (8th Cir. 2005) ("There is not a 'reasonable probability' that Scarberry would have prevailed against the prosecution's considerable evidence even if his statements to the Des Moines officers about his recipe for cooking methamphetamine had not been admitted." (quoting *Strickland*, 466 U.S. at 694)). Even if law enforcement lacked probable cause to conduct the stop due to a defective radar gun, the CI's tip served as an additional independent, legitimate reason for conducting

7

the stop. Crim. Doc. 60. Harry has failed to state a claim of ineffective assistance of counsel as to investigating the calibration of the radar gun.

### b. *Failure to Request the Identity of the CI*

When a defendant seeks disclosure of a confidential informant, "the defendant bears the burden of demonstrating a need for disclosure." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). The court must weigh "the defendant's right to information against the government's privilege to withhold the identity of its confidential informants." *United States v. Lapsley*, 334 F.3d 762, 763–64 (8th Cir. 2003) (quoting *United States v. Fairchild*, 122 F.3d 605, 609 (8th Cir. 1997)) (in turn quoting *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991)). "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However, disclosure should not be ordered unless the informant's identity is deemed "vital to a fair trial." *Wright*, 145 F.3d at 975 (quoting *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)). Thus, for example, "disclosure is typically not required when the informant 'merely convey[s] information to the government but neither witness[es] nor participat[es] in the offense.'" *Lapsley*, 334 F.3d at 764 (quoting *United States v. Chevre*, 146 F.3d 622, 623 (8th Cir. 1998)) (in turn quoting *Harrington*, 951 F.2d at 878).

Harry argues that his counsel were ineffective for failing to request the identity of the CI, which was necessary to determine the CI's reliability. Doc. 1-1 at 3. Moreover, Harry argues that the officers lacked reasonable suspicion for the search because they did not prove that the CI was reliable. *Id.* at 6. In his affidavit, Nathan states that he did not seek the disclosure of the CI's identity because he did not believe it was necessary for a "fair determination of the motion to suppress" and that the Government's disclosure of the CI's contact record, criminal history, and payment history was sufficient. Doc. 3

8

at 2-3. Scheetz states that there was "no legal basis for a non-frivolous motion to seek the identity of the informant." Doc. 6 at 2. The Government further argues that, although this was the informant's first tip, the level of detail corroborated by the officers established the CI's credibility and that the identity of the informant is immaterial to the case, and therefore, Harry's counsel was not ineffective. Doc. 8-1 at 15-17.

Harry has not met his burden of demonstrating the need to disclose the CI's identity. He argues that disclosing the CI's identity was necessary to determine the CI's reliability. Doc. 1-1 at 6. However, in my order accepting the report and recommendation and denying Harry's motion to suppress, I found the CI to be reliable and that the tip provided law enforcement reasonable suspicion to justify an investigatory stop:

> Even if an informant has no track record of providing reliable information to law enforcement, "police may deem an informant credible and make a finding of probable cause when an informant's information is at least partly corroborated." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). "An informant may also prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place." *Id.* Here, the CI provided predictive information and officers were able to independently corroborate some of the details provided by the CI. The CI told officers the identity of the defendant and his friend, Dennis Thul. The CI also identified the type of vehicle they would be in—a "big newer white truck" with "no back seat." See Doc. No. 31. The CI stated this truck would be registered to Dennis Thul's dad, Dale Thul. Finally, the CI was able to let law enforcement know when the truck was approximately an hour away from Dubuque. *Id.* Based on other information, law enforcement suspected that Harry was bringing methamphetamine into Dubuque from either Marshalltown or Des Moines. See Doc. No. 44 at 73-74. This gave officers a good idea of where to look for a newer white pickup truck traveling to Dubuque.

*United States v. Harry*, No. CR17-1017-LTS, 2017 WL 5458002, at *4 (N.D. Iowa November 14, 2017).

Given these findings, it was unnecessary for Scheetz to argue for the disclosure of the CI's identity. *See Hoskins v. Smith*, No. C07-2018, 2007 WL 3232209, at *12

9

(finding counsel's decision to not seek identity of informant was reasonable). Such a disclosure would be immaterial to the determination of the case. Thus, it was reasonable for counsel not to request the disclosure of the CI's identity.

### c. *Failure to Investigate the Credibility of Deputy Kearney*

Harry argues that his counsel were ineffective for failing to investigate the credibility of one of the officers involved in the traffic stop, Deputy Kearney. Doc. 1-1 at 8. Specifically, Harry argues that his counsel should have "subpoenaed the radio logs and radio traffic between [Officer] Williams and the numerous officers involved, as well as deposing all officers involved . . . ." to determine the accuracy of Kearney's assertion that he did not have knowledge about the CI at the time of the stop. *Id.* at 9. Harry contends that if Kearney was aware of the CI's information prior to the stop, then the traffic violation may have been a false pretext for the stop, negating probable cause. *Id.* at 9-10.

There is no factual basis for Harry's allegation that counsel was deficient for failing to investigate Deputy Kearney's credibility. Kearney did not state that he did not have prior information about the text. Rather, he shared that he was aware of the information that the CI provided. On both direct and cross examination during the suppression hearing, Kearney stated that he was aware Harry and Dennis Thul were traveling northbound on Highway 151 in a white truck and possessed methamphetamine (the information the CI supplied). Crim. Doc. 44.

In addition, Kearney's knowledge did not impact my finding that the tip provided law enforcement with reasonable suspicion to justify the stop based on the corroborated details provided by the CI. Crim. Doc. 60. That finding was affirmed on appeal. *United States v. Harry,* 930 F.3d 1000, 1006 (8th Cir. 2019). I further note that in their affidavits, both Nathan and Scheetz state that Deputy Kearney's cross examination was sufficient to determine his credibility. Doc. 3 at 3; Doc. 6 at 2. Finally, as argued by the Government, Kearney's knowledge of the CI's tip made no difference given that the

10

Case 2:20-cv-01046-LTS-MAR   Document 13   Filed 07/22/22   Page 10 of 14

stop was based on both the tip and speeding. Doc. 8-1 at 18. Harry has not shown that his counsel acted unreasonably by conducting further investigation into Deputy Kearney's credibility.

### d. *Failure to Allow Harry to Review Discovery Materials*

Harry argues that his counsel were ineffective by failing to allow him to review discovery material. Doc. 1-1 at 10. He claims he requested to view his discovery file, but counsel never showed him the file, which denied Harry the "right to . . . meaningfully participate in his defense." *Id*. at 12. In response, Nathan states that he never refused to let Harry review his discovery file. Doc. 3 at 3. Scheetz states that he personally reviewed all discovery material with Harry on several occasions and that Harry reviewed all discovery in the case. Doc. 6 at 2. The Government points out that the stipulated discovery order (Crim. Doc. 9) barred counsel from providing Harry with copies of discovery materials. Doc. 8-1 at 19.

Although there appears to be a factual dispute regarding Harry's opportunity to review his discovery file, Harry has not shown a reasonable probability that, but for counsels' alleged errors, the result of the proceeding would have been different. As such, an evidentiary hearing is unnecessary. Moreover, the Government is correct that the stipulated discovery order prohibited counsel from leaving any copies of discovery material with Harry. *See Sturdivant v. United* States, No. C12-3085-LTS, 2016 WL 1298127, at *12 (N.D. Iowa March 31, 2016) (defendant failed to show counsel was ineffective for not providing copies of discovery materials prohibited by court order). Harry has failed to show that counsels' performance was deficient with regard to his discovery file.

## 2. *Ineffective Assistance of Appellate Counsel*

"Counsel is not required to raise every potential issue on appeal." *Anderson v. United States,* 393 F.3d 749, 754 (8th Cir. 2005). "Reasonable appellate strategy requires an attorney to limit the appeal to those issues which he determines to have the highest likelihood of success." *Parker v. Bowersox*, 94 F.3d 458, 462 (8th Cir. 1996). The Supreme Court recognized "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Harry argues that his appellate counsel, Scheetz, failed to seek appellate review of the nondisclosure of the CI's identity.[1] Doc. 1-1 at 13. Scheetz states that there was no non-frivolous reason to request the identity of the CI. Doc. 6 at 2. Further, he states that the defense had access to relevant, non-identifying information, including the CI's criminal history and the fact that the CI received payment for information. *Id.* at 2-3. The Government argues that Scheetz reasonably chose not to raise the issue on appeal. Doc. 8-1 at 20-21. Given that counsel did not raise the issue at trial, it would have been difficult to raise on appeal.[2] *Id.* at 21. Further, the Government argues Harry cannot prove that he was prejudiced at trial or on appeal by not having the CI's identity revealed. *Id.*

Harry has failed to show that his counsel was deficient for failing to raise the disclosure of the CI on appeal. The thrust of Harry's argument is that appellate counsel should have appealed my finding that the officers had reasonable suspicion to justify the stop based on the CI's tip because the CI may have been unreliable. Scheetz instead

---

[1] As noted above, in discussing Harry's motions to amend his reply and to withdraw that motion, there is a question of whether Harry intended me to consider this issue. However, because it was raised in his original filing and ruling on the issue will not give rise to any prejudice to Harry, I have chosen to address it.

[2] I have already found that Scheetz was not ineffective for failing to raise the issue during the pendency of the case.

12

Case 2:20-cv-01046-LTS-MAR   Document 13   Filed 07/22/22   Page 12 of 14

chose to raise stronger issues with a higher likelihood of success. *Parker*, 94 F.3d at 462 (finding appellate counsel's failure to raise admission of evidence and sufficiency of evidence supporting conviction on appeal was not deficient). That decision did not constitute deficient performance.

## VI. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

13

Having thoroughly reviewed the record in this case, I find that Harry failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, a certificate of appealability will not issue. If he desires further review of his § 2255 motion, Harry may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VII. CONCLUSION

For the reasons set forth herein,

1. Harry's motion (Doc. 11) to amend his reply brief is **denied**.
2. Harry's motion (Doc. 12) to withdraw the motion to amend is **denied**.
3. Harry's motion pursuant to 28 U.S.C. § 2255 (Doc. 1) is **denied** as to all claims and this action is **dismissed with prejudice**.
4. The Clerk of Court shall **close this case**.
5. A certificate of appealability will **not issue**.

**IT IS SO ORDERED.**

**DATED** this 22nd day of July, 2022.

_____
Leonard T. Strand, Chief Judge